John G. Papianou (*pro hac vice*)
MONTGOMERY, MCCRACKEN,
  WALKER & RHOADS, LLP
123 South Broad Street, 24th Floor
Philadelphia, PA 19109
Tel: (215) 772-1500
Fax: (215) 772-7620
E-Mail: jpapianou@mmwr.com

Scott D. Gattey (CSB # 180875)
Gattey Law Office
1001 Laurel Street, Suite C
San Carlos, California 94070
Telephone:  (650) 596-7123
Facsimile:   (877) 269-4437
E-Mail:  scott@gatteylaw.com

Attorneys for Defendant VERIFONE SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| PAUL M. STELMACHERS, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>VERIFONE SYSTEMS, INC.,<br><br>Defendant. | Case No. 14-CV-04912 EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date: July 13, 2017**<br>**Time: 9:00 a.m.**<br>**Courtroom: 4 (Fifth Floor)**<br>**Judge:  The Hon. Edward J. Davila** |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

      **PLEASE TAKE NOTICE** that on July 13, 2017 at 9:00 a.m., or as soon thereafter as

4

this motion may be heard in the above-entitled court, located at 280 South 1st Street, San Jose,

5

CA 95113, 5th Floor, Defendant VeriFone Systems, Inc. ("Verifone") will, and hereby does,

6

move the Court for an order dismissing Plaintiff's Second Amended Class Action Complaint

("Second Amended Complaint") without leave to amend.

7

      Plaintiff has not, and cannot, cure the defects that caused this Court to dismiss his

8

Complaint and First Amended Complaint.  The Court should dismiss his Second Amended

9

Complaint, with prejudice, on any one (or more) of the following grounds:

10

      1.      Plaintiff lacks standing to sue because he suffered no injury.  He took a cab ride,

11

paid for the ride with his credit card, and got a receipt.  While he claims his receipt includes too

12

many digits, in violation of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g)

13

("FACTA" or the "Act"), those digits did not harm him.  Nor have those digits presented a risk

of harm that is "certainly impending."  Plaintiff is in possession of his receipt.  It is now

14

December 2016 – over two years after Plaintiff filed suit.  Nothing has happened to him.

15

Nothing will.

16

      2.      Plaintiff sued the wrong party.  The Act, by its terms, applies to persons who

17

accept credit cards or debit cards for the transaction of business with consumers.  It does not

18

apply to companies, like Verifone, that provide the software and technology used to facilitate

transactions between consumers and merchants.

19

      3.      FACTA does not prohibit printing the first digit of a credit card number, as two

20

federal district courts have now held.

21

      4.      Plaintiff does not plausibly allege that Verifone willfully violated the Act, and the

22

statutory damages Plaintiff seeks are available only for willful violations.

23

24

25

26

27

28

1      This Motion is based on this Notice of Motion and Motion, the accompanying

2 Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith (and

3 exhibits attached thereto), the Declaration of John G. Papianou, and such other matters as may

4 properly come before the Court.

5

6      Dated:  December 21, 2016

7                                                   /s/ John G. Papianou
                                                   John G. Papianou (*pro hac vice*)
8                                                   MONTGOMERY, MCCRACKEN,
                                                     WALKER & RHOADS, LLP
9
                                                   Scott D. Gattey
10                                                  GATTEY LAW OFFICE

11                                                  Attorneys for Defendant
12                                                  VERIFONE SYSTEMS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................................2

    a.    Brief History of FACTA Litigation.................................................................2

    b.    Plaintiff's Transaction .....................................................................................3

    c.    The First Dismissal ..........................................................................................4

    d.    The Second Dismissal ......................................................................................4

III.  LEGAL STANDARD ..................................................................................................6

IV.   ARGUMENT ...............................................................................................................6

    a.    Plaintiff Lacks Standing to Bring the Claims He Asserts ...................................6

    b.    Plaintiff Fails—Again—To Plausibly Allege That Verifone Served as a Merchant in Connection with the Transaction at Issue .........................................8

    c.    The Act Does Not Prohibit Printing the First Digit and Last Four Digits of Plaintiff's Visa Card .......................................................................................11

    d.    Verifone's Interpretation of the Act Is Objectively Reasonable .........................12

V.    CONCLUSION ..........................................................................................................16

**TABLE OF AUTHORITIES**
**(cont'd)**

**Pages**

**Cases**

*Anderson v. Nelson,*
   No. 10-1929, 2010 WL 4884670 (D. Minn. Nov. 4, 2010), *report and*
   *recommendation adopted sub nom. Anderson v. Action Sys., Inc.*, No. 10-
   1929, 2010 WL 4877818 (D. Minn. Nov. 23, 2010)............................................................10

*Ashcraft v. Iqbal,*
   566 U.S. 662 (2009) ..............................................................................................................6

*Broderick v. 119TCBAY, LLC,*
   670 F. Supp. 2d 612 (W.D. Mich. 2009)...............................................................2, 11, 12, 16

*In re Gilead Sciences Sec. Litig.,*
   536 F.3d 1049 (9th Cir. 2008) ...............................................................................................6

*Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau,*
   701 F.2d 1276 (9th Cir. 1983) ...............................................................................................6

*Levine v. World Financial Network Nat'l Bank,*
   554 F.3d 1314 (11th Cir. 2009) ............................................................................................14

*Long v. Tommy Hilfiger U.S.A., Inc.,*
   671 F.3d 371 (3d Cir. 2012) .................................................................................................14

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 (9th Cir. 1999) .................................................................................................6

*Moss v. U.S. Secret Serv.,*
   572 F.3d 962 (9th Cir. 2009) .................................................................................................6

*Outdoor Media Group, Inc. v. City of Beaumont,*
   506 F.3d 895 (9th Cir. 2007) .................................................................................................6

*Safeco Ins. Co. of Am. v. Burr,*
   551 U.S. 47 (2007) ...............................................................................................2, 12, 13, 14

*Shlahtichman v. 1-800 Contacts, Inc.,*
   615 F.3d 794 (7th Cir. 2010) ................................................................................................14

*Simonoff v. Exepdia, Inc.,*
   643 F.3d 1202 (9th Cir. 2011) ...........................................................................................9, 10

*Van Straaten v. Shell Oil Prods. Co.,*
   678 F.3d 486 (7th Cir. 2012) ...........................................................................................13, 14

<u>**TABLE OF AUTHORITIES**</u>
**(cont'd)**

**Pages**

*Visa Int'l Serv. Ass'n v. D.S.C. Distributors, Inc.*,
   No. CV-88-6411, 1991 WL 182563 (C.D. Cal. Jan. 11, 1991)..............................................11

**Statutes**

15 U.S.C. § 1681  ...............................................................................................2, 3, 10, 12

15 U.S.C. §1692c(g)(1) ................................................................................................10

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, §
   2(a)(3)-(5), 122 Stat. 1565 (codified at 15 U.S.C. § 1681n(d))........................................3

-iii-

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION**

3

Paul M. Stelmachers took a cab ride, paid for it with his Visa credit card, and got a

4
receipt.  That's it.  Nothing happened to him.  Nothing will.  Nonetheless, he claims VeriFone

5
Systems, Inc. ("Verifone") owes him—and thousands of others—between $100 and $1,000

6
because it "willfully" violated the Fair and Accurate Credit Transactions Act, 15 U.S.C. §

7
1681c(g) ("FACTA" or the "Act") by displaying on his credit card receipt the first digit and the

8
last four digits of his credit card number.  This Court twice dismissed his complaint.  Verifone

respectfully requests that it do so again—this time with prejudice.

9
*First*, as this Court held in its November 2016 Opinion (Dkt. No. 52), Plaintiff lacks

10
standing to sue because he suffered no harm.  Plaintiff's Second Amended Complaint does

11
nothing to compel a different result.  While he now claims he's "stressed" he may become a

victim of identity theft and that he has to "consistently check his credit card statements," these

12
allegations border on preposterous.  As this Court has recognized, Plaintiff has not lost his credit

13
card receipt or otherwise alleged it has fallen into the hands of a nefarious person.  He cannot

14
plausibly allege that he "fears" he may become the victim of identity theft.  In any event, the

15
United States Supreme Court in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), squarely

16
held that "fear" of harm does not constitute injury in fact.  The issue is whether the underlying

17
harm—here identity theft—has happened or is substantially likely to happen.  It's not.  Nor has

Plaintiff alleged otherwise.

18
*Second*, as this Court held in its December 2015 Opinion dismissing Plaintiff's

19
Complaint (Dkt. No. 34), he fails to allege plausibly that FACTA applies to Verifone.

20
Specifically, he fails to allege that Verifone "is a merchant" that sold something to him in

21
connection with a transaction.  December 2015 Opinion [Dkt. No. 34] at 4.  Indeed, the handful

22
of changes Plaintiff made to his Amended Complaint and Second Amended Complaint ***support***

23
Verifone's position that the Act does not apply here.  As Plaintiff now concedes, he transacted

business with a cab company.  Second Amended Complaint ("SAC") ¶ 52.  He took a cab ride

24
and paid the cab company, not Verifone, for the ride.  That Verifone allegedly "produce[d],"

25
"manage[d]," and "program[med]" the electronic device that allowed Plaintiff to pay for his cab

26
ride with a credit card is irrelevant.  SAC ¶¶ 48-50.  FACTA applies to companies that transact

27
business with persons who pay with credit cards.  December 2015 Opinion [Dkt. No. 34] at 4.

28

*Third*, nobody—not even the cab driver who handed Plaintiff his receipt, or the cab company for which the cab driver worked—violated the Act.  Although Plaintiff claims he received a receipt that displayed the first digit of his card number along with the last four, two federal courts—including one earlier this year in a nearly identical case—have squarely held that printing the first digit of a credit card number does ***not*** violate the Act.  *Noble v. Nevada Checker CAB Corp.*, 2016 WL 4432685, *2 (D. Nev. Aug. 19, 20016); *Broderick v. 119TCBAY, LLC*, 670 F. Supp. 2d 612, 617 (W.D. Mich. 2009).

*Fourth*, Plaintiff does not—and cannot—plausibly allege that Verifone willfully violated the Act.  FACTA permits private damage suits seeking statutory damages of $100 to $1000 per transaction like this one ***only*** for willful violations.  15 U.S.C. § 1681n.  The United States Supreme Court has held that if an interpretation of a statute is objectively reasonable, albeit incorrect, a defendant who followed that interpretation cannot be found to have willfully violated the statute.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

Here, Verifone's interpretation of the Act—that FACTA allows companies to print the first digit of a credit card number on a receipt—is objectively reasonable, particularly in light of the *Noble* and *Broderick* decisions finding no violation for doing ***exactly that***.  Similarly, Verifone's reading of the Act—that it does not apply to Verifone but, rather, to the cab company Plaintiff transacted business with—is also objectively reasonable.  December 2015 Opinion [Dkt. No. 34] at 5 (holding FACTA applies to merchants with whom a consumer transacted business).

Because Plaintiff's claim for statutory damages is premised solely on the theory that Verifone willfully violated the Act, and because Verifone did not, as a matter of law, willfully violate it, the Court should dismiss his Complaint with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   Brief History of FACTA Litigation

Congress enacted FACTA in 2003 to protect consumers against exploitative credit practices and the risk of identity theft.  The Act provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  Statutory damages of $100 to $1000 per transaction are available only for a "willful" violation.  15 U.S.C. § 1681n.  A plaintiff who could prove he was actually damaged could recover his actual damages without proving willfulness, but no

-2-

plaintiff has ever done so to Verifone's knowledge and Plaintiff here seeks only statutory damages.

An explosion of class action lawsuits followed FACTA's 2006 compliance deadline. The plaintiffs made boilerplate allegations in virtually every case that merchants "willfully" violated FACTA by issuing receipts that allegedly violated the statute. And those plaintiffs invariably sought statutory damages of $100 to $1000 for each receipt, which, for large merchants, often amounted to billions of dollars.

In 2008, Congress responded to this potentially ruinous liability without allegations of actual injury by enacting the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, § 2(a)(3)-(5), 122 Stat. 1565 (codified at 15 U.S.C. § 1681n(d)) (hereafter, "Clarification Act"). Its purpose was to "ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Clarification Act § 2(b). Congress clarified that FACTA's purpose was "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Clarification Act § 2(a)(1). Yet "[n]one of these lawsuits [filed to date] contained an allegation of harm to any consumer's identity." *Id.* § 2(a)(5). In addition to clarifying FACTA's purpose, the Clarification Act also clarified its prohibition on printing a card's expiration date on receipts—a requirement not at issue here.

**b.    Plaintiff's Transaction**

On June 3, 2014, Plaintiff took a taxi cab ride in Las Vegas. SAC ¶ 29. He used his Visa credit card to pay his fare. SAC ¶¶ 29, 30. The driver handed him a receipt that allegedly displayed "more than the last five (5) digits of" his credit card number. SAC ¶ 33 & Exh. A attached thereto. Although Plaintiff attached a copy of his receipt to his Complaint, he redacted all of the numbers printed. But Plaintiff's lawyer confirmed that the receipt displays the first digit and the last four digits of Plaintiff's credit card number.[1]

---

[1] Verifone's counsel conferred with Plaintiff's counsel before filing its original motion to dismiss. Counsel confirmed he would not contest the fact—and did not contest the fact—that Plaintiff's receipt displayed the first and last four digits of his credit card number. *See* Declaration of John G. Papianou, filed concurrently herewith, at ¶ 2.

-3-

1   Plaintiff does not allege that his identity was stolen or that he experienced credit card

2   fraud or any other actual damage.  Nonetheless, Plaintiff brought this putative nationwide class

3   action against Verifone, the company that provided the taxi cab with the technology and

4   equipment that allowed Plaintiff to use his credit card to pay for his ride, alleging it "willfully"

    violated the Act and seeking to recover $100 to $1000 for every credit and debit card receipt

5   Verifone's customers (i.e., cab companies) issued allegedly in violation of it.

6           **c.     The First Dismissal**

7           On February 10, 2015, Verifone moved to dismiss Plaintiff's Complaint on grounds that

8   he failed to plausibly allege that Verifone served as a merchant in connection with the

9   transaction at issue and thus the Act did not apply to it.  On December 7, 2015, the Court granted

    Verifone's motion.  December 2015 Opinion [Dkt. No. 34] at 5.  A "merchant," the Court wrote,

10  is "a buyer and seller of commodities for profit."  *Id.* at 4 (quotation omitted).  "It appears …

11  Verifone only manufactured the machine that processed Plaintiff's credit card payment."  *Id.* at

12  6.  Finding that Plaintiff failed to overcome this threshold issue, the Court did not address

13  Verifone's two additional arguments: (1) printing the first and last four digits does not constitute

14  a violation of the Act; and (2) Plaintiff did not plausibly allege a willful violation.

15          **d.     The Second Dismissal**

16          On December 30, 2015, Plaintiff filed an Amended Complaint, which Verifone moved to

    dismiss on the same grounds it moved to dismiss his original Complaint.  While Verifone's

17  motion was pending, the United States Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct.

18  1540 (2016).  The *Spokeo* Court clarified that to have standing under Article III of the

19  Constitution, a plaintiff must allege and prove facts that show, among other things, that he or she

20  suffered an injury in fact that is both concrete and particularized.  *Id.* at 1547-48.  The Court

21  vacated a Ninth Circuit decision upholding a plaintiff's allegation of a claimed harm because the

    Ninth Circuit "focused on the second characteristic (particularity), but it overlooked the first

22  (concreteness)."  *Id.*  The Court explained:

23          Where, as here, a case is at the pleading stage, the plaintiff must
              "clearly … allege facts demonstrating" each element [of Article III
24            standing].  …  ***A "concrete" injury must be "de facto"; that is, it
              must actually exist.***  When we have used the adjective "concrete,"
25            we have meant to convey the usual meaning of the term—"real,"
              and not "abstract."  …  Congress' role in identifying and elevating
26            intangible  harms  does  not  mean  that  a  plaintiff  automatically

27                                                -4-

28

satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  ***Article III standing requires a concrete injury even in the context of a statutory violation.***  . . . That does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. … [But plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation.  A violation of one of the [Fair Credit Reporting Act]'s procedural requirements may result in no harm. … ***[The Ninth Circuit] did not address the question framed by our discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement***.

*Id*. at 1547-50 (emphasis added) (citations omitted).  Whether the "degree of risk" is "sufficient to meet the concreteness requirement" depends on whether the risk of harm is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury" are not sufficient.'") (emphasis in original).

On November 21, 2016, the Court granted Verifone's motion.  November 2016 Opinion [Dkt. No. 52] at 6.  Notably, the Court recognized that Plaintiff, "and no one else, received the receipt containing more than the last five digits of his credit card number.  Thus, unless a litany of speculative events come about, the risk that Plaintiff will be subjected to the type of 'low tech' identity theft identified in the FAC is too attenuated to constitute a qualifying injury in fact for standing, even if Plaintiff successfully alleged a violation of FACTA."  *Id*.  Nonetheless, the Court gave Plaintiff an opportunity to "clarify his standing allegations … if at all possible."  *Id*.

In response to this Court's request that Plaintiff clarify his standing allegations, Plaintiff has now filed a Second Amended Complaint alleging the following:

- He "consistently checked his credit card statements after receiving the subject receipt to confirm that he was not the victim of identity theft – causing Plaintiff unnecessary stress and wasting Plaintiff's time."  SAC ¶ 37.  *See also id*. ¶ 91 (the receipt "burdened" Plaintiff "with the obligation to consistently check whether receipts created by Defendant's point-of-sale devices were FACTA-compliant")

- He faced "unnecessary fear and risk of identity theft."  *Id*.¶ 92.

-5-

1

## III.   LEGAL STANDARD

2

3   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcraft v. Iqbal*, 566

4   U.S. 662, 678 (2009) (citation omitted).  For a claim to be facially plausible, a plaintiff must

5   plead "factual content that allows the court to draw the reasonable inference that the defendant is

6   liable for the misconduct alleged."  *Id.*  A court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

7   *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotations omitted).  The Court

8   must also determine whether any well-pleaded facts, if presumed to be true, constitute "factual

9   content [that] allows the court to draw the reasonable inference that the defendant is liable for the

10  misconduct alleged." *Iqbal*, 662 U.S. at 678.  Thus, for "a complaint to survive a motion to

11  dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be

12  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In addition to a plaintiff's allegations, the

13  court may consider documents referenced in the complaint and matters subject to judicial notice.

14  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

15  A complaint should be dismissed with prejudice if further amendments would be futile.

16  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1999) (where amendment

17  would be futile, no reason to prolong litigation by allowing further amendments); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (futile

18  amendments should not be permitted).

19  ## IV.   ARGUMENT

20  ### a.   Plaintiff Lacks Standing to Bring the Claims He Asserts

21  Plaintiff lacks standing to sue—as this Court held in November 2016—because he alleges

22  neither a concrete injury nor a risk of injury that is "sufficient to meet the concreteness

23  requirement." *Spokeo*, 136 S. Ct. at 1550.  He took a cab ride, paid for the ride with his credit

24  card, and got a receipt.  Nothing has happened to him as a result.  Nor does Plaintiff plausibly allege that anything is going to happen to him.

25  In a makeweight attempt to plead injury in fact, Plaintiff alleges he was "burdened" with

26  having to check his credit card statements to make sure he wasn't the victim of identity theft.

27

28

-6-

SAC ¶¶ 37, 91.  He also alleges he faced an "unnecessary fear and risk of identity theft."  *Id.*¶ 92.
These allegations do nothing to save his Second Amended Complaint.

The issue is not whether Plaintiff "fears" something might happen.  Nor is it whether he
"constantly checks" his credit card statements based on that fear.  In *Clapper*, plaintiffs certainly
"feared" the government would intercept their communications. 133 S. Ct. at 1145 (plaintiffs
sought to establish standing "stemming from a reasonable fear of future harmful government
conduct").  In fact, Plaintiffs' fear—and the steps they took to protect their communications—
formed the very basis on which they claimed standing.  *Id.* (plaintiffs claimed they were
"suffering present injuries in fact—economic and professional harms—stemming from" the fear
the government would intercept their communications).  But the Supreme Court flatly rejected
that argument:

> The Second Circuit's analysis improperly allowed respondents to
> establish standing by asserting that they suffer present costs and
> burdens that are based on a ***fear of surveillance***, so long as that
> fear is not "fanciful, paranoid, or otherwise unreasonable." See *id.*,
> at 134.   This improperly waters down the fundamental
> requirements of Article III. Respondents' contention that they have
> standing because they incurred certain costs as a reasonable
> reaction to a risk of harm is unavailing—because the harm
> respondents seek to avoid is not certainly impending. In other
> words, ***respondents cannot manufacture standing merely by
> inflicting harm on themselves based on their fears of
> hypothetical future harm that is not certainly impending***. … Any
> ongoing injuries that respondents are suffering are not fairly
> traceable to § 1881a.

133 S. Ct. at 1151 (emphasis added).

The relevant question—as this Court recognized in its November 2016 Order—is
whether Plaintiff has plausibly alleged a concrete harm or one that is certainly impending.
*Clapper*, 133 S. Ct. at 1147; *Spokeo*, 136 S. Ct. at 1548-49.  He has not.  He has possession of
his receipt.  November 2016 Opinion [Dkt. No. 52] at 6.  He does not allege he has lost it or that
it has otherwise fallen into the hands of a nefarious person looking to steal his identity or commit
fraud.  *Id.* at 6 n.3.  Nor does he otherwise plausibly allege that his receipt is substantially likely
to cause him to become the victim of identity theft.  Indeed, if Plaintiff really believed his receipt
posed a risk of harm—let alone a substantial risk of harm—he could burn it, tear it into pieces, or

-7-

1  otherwise dispose of it.  But the reality is Plaintiff's receipt poses no risk of harm.  That is why

2  nothing has happened to him despite the fact that this case has been pending for over two years.

3          This Court's November 2016 Opinion is supported by numerous courts that have recently

4  held that FACTA plaintiffs lack standing when they fail to plausibly allege a concrete injury or

5  one that is certainly impending.  Just last week, the United States Court of Appeals for the

6  Seventh Circuit held that a plaintiff lacked standing to bring a FACTA claim where he alleged no

   material risk of harm:

7                    The allegations demonstrate that Meyers did not suffer any harm
                     because of Nicolet's printing of the expiration date on his receipt.
8                    Nor has the violation created any appreciable risk of harm.  After
                     all, Meyers discovered the violation immediately and nobody else
9                    ever saw the non-compliant receipt.  In these circumstances, it is
                     hard to imagine how the expiration date's presence could have
10                   increased the risk that Meyers' identity would be compromised.  "It
                     is difficult to imagine how the dissemination of an incorrect zip
11                   code, without more, could work any concrete harm."

12

13 *Meyers v. Nicolet Restaurant*, No. 16-2075 (7th Cir. Dec. 13, 2016) (quoting *Spokeo*, 136 S. Ct.

14 at 1550).

15         And earlier this year, the District Court of Nevada in *Noble v. Nevada Checker CAB

16 Corp.*, 2016 WL 4432685 (D. Nev. Aug. 19, 20016), likewise held that plaintiffs (each of whom

17 received an allegedly non-compliant receipt from a cab driver) lacked standing to sue under

   FACTA because they alleged neither harm nor a material risk of harm.  *Id.* at *4.  *See also

18 Kamal v. J. Crew Group, Inc.*, 2016 WL 6133827 (D.N.J. Oct. 20, 2016) (dismissing FACTA

19 claim for lack of standing where "Plaintiff's allegations do not entail a degree of risk sufficient to

20 meet the concreteness requirement") (quotation omitted); *Thompson v. Rally House of Kansas

21 City, Inc.*, No. 15-00886 (W.D. Mo. Oct. 11, 2016) (same).

22         The Court gave Plaintiff a chance to plausibly allege an injury in fact.  He can't.

23 Verifone respectfully requests that the Court dismiss his Second Amended Complaint with

   prejudice.

24        **b.    Plaintiff Fails—Again—To Plausibly Allege That Verifone Served as a
                  Merchant in Connection with the Transaction at Issue.**
25

26         Even if Plaintiff had standing—which he does not—the Court should dismiss his Second

   Amended Complaint for the same reason it dismissed his original Complaint:  he cannot

27

28                                          -8-

plausibly allege that Verifone was subject to the Act's requirements in connection with his cab ride.  December 2015 Opinion [Dkt. No. 34] at 4-5.  FACTA, by its terms, applies to "person[s] that accept credit cards or debit cards for the transaction of business."  Here, Verifone did not accept Plaintiff's Visa card for the transaction of business.  Plaintiff transacted business with a cab company for a cab ride.

The Act simply does not apply to the company that manufactured, managed, or programmed the electronic device the cab driver used to swipe Plaintiff's credit card.  Indeed, that is the reason that despite **_thousands_** of FACTA lawsuits over the past decade, Plaintiff cannot point to a **_single case_** in which a manufacturer, manager, or programmer of an electronic device was held liable to a consumer under the Act.  In every case, the consumer has sued the company with whom he or she transacted business.

Plaintiff's reliance on _Simonoff v. Exepdia, Inc._, 643 F.3d 1202 (9th Cir. 2011), does not help him.  SAC ¶ 50 n.2.  There, the Ninth Circuit addressed the unrelated question of whether FACTA applied to a receipt e-mailed to a consumer in connection with an online transaction.  The consumer purchased travel arrangements through Expedia's Web site and paid Expedia.  _Id._ at 1204 & n.6.  Expedia e-mailed him a receipt that included his credit card's expiration date.  He sued Expedia, claiming a FACTA violation.  The court affirmed the district court's order granting Expedia's motion to dismiss because the statute applies only to receipts involving a "physical imprint onto paper or another tangible medium"—not e-mailed receipts.  _Id._ at 1208-09.  The Ninth Circuit did not consider the issue here—whether an electronic point-of-sale device maker "accepts credit or debit cards for the transaction of business."  15 U.S.C. § 1681c(g)(1).  Rather, "[t]he question we consider under FACTA is the meaning of the words 'print' and 'electronically printed' in connection with an emailed receipt."  _Simonoff_, 643 F.3d at 1204-05.  The answer to that question sheds no light on the issue here.

Plaintiff nonetheless argues that _Simonoff_ supports the proposition that the Act applies to Verifone because it allegedly "is the only entity with direct control over the devices that print the offending receipts."  SAC ¶ 50 n.2.  He is wrong.  In support of its holding that the Act covers only receipts businesses print—not those e-mailed to consumers' computers—the Ninth Circuit believed it would be "nonsensical" to construe the Act to make those subject to it liable for e-mailed images displayed on consumers' computers.  There, the consumer argued that the Act applies to e-mailed receipts because a consumer could log onto his or her computer and view the

-9-

receipt on a monitor.  The court—rejecting this argument—found that the Act "is aimed at the vendor, not the consumer," because the vendor "has control over the 'cash register or other machine or device that electronically prints' a receipt."  *Id.* at 1209 (quoting 15 U.S.C. § 1681c(g)(1) & (3)).  "If [consumers'] computer screens were deemed to 'print' receipts within the meaning of the statute," the court wrote, "merchants' liability would hinge on the date the customer purchased and began using a computer screen—an unintended, nonsensical, and unpredictable result."  *Id.*  The court's reference to a merchant "controlling" the device used to print receipts is a simple reflection of the fact that it is the merchant who elects to use a particular device and, under the Act, bears responsibility for receipts it prints.  The Ninth Circuit did not consider whether the device manufacturer, manager, or programmer might be liable too—the question here.

  *Anderson v. Nelson*, No. 10-1929, 2010 WL 4884670 (D. Minn. Nov. 4, 2010), *report and recommendation adopted sub nom. Anderson v. Action Sys., Inc.*, No. 10-1929, 2010 WL 4877818, 2010 U.S. Dist. LEXIS 124800 (D. Minn. Nov. 23, 2010), is—in contrast to *Simonoff*—directly on point.  In *Anderson*, a customer alleged that a restaurant violated the Act by printing credit card receipts that displayed more than the last five digits.  The restaurant, in turn, filed a third-party complaint against its point-of-sale system manufacturer and reseller, alleging that they caused any statutory violation that might be found.  In rejecting the restaurant's third-party contribution claim, the court noted that "[t]he plain language of FACTA states that FACTA applies only to persons who accept credit or debit cards for the transaction of business.  15 U.S.C. §1692c(g)(1).  [The manufacturer] is ***not***, therefore, a covered entity."  *Id.* at *4 n.4 (emphasis added).

  The same is true here.  Plaintiff does not plausibly allege, as he must, that Verifone "accept[ed] his card for the transaction of business."  That's because it didn't.  Plaintiff took a cab ride.  SAC ¶ 29.  He transacted business with a taxi company.  SAC ¶¶ 30, 31 52.  Specifically, he rode in a cab and paid $66.80 for the ride.  *Id.* & Exhibit A.  The driver and taxi company accepted his card instead of cash.  The driver, not Verifone, handed Plaintiff a receipt.  In short, the cab company, not Verifone, was the company with whom he transacted business.  The Act thus applies, if at all, to the cab company.  Because Plaintiff has no claim against Verifone, the Court should dismiss his Second Amended Complaint.

-10-

**c.    The Act Does Not Prohibit Printing the First Digit and Last Four Digits of Plaintiff's Visa Card.**

The Court should dismiss Plaintiff's Second Amended Complaint for the separate and independent reason that the Act does not prohibit printing the first digit and last four digits of a credit card number.  Indeed, printing those five digits displays **less** sensitive information than the Act permits.

The first digit of Plaintiff's Visa card is no mystery.  It is 4.  Verifone knows this not because it has seen an un-redacted copy of Plaintiff's receipt.  It hasn't.  It knows this because—as the *Broderick* court explained—*every* Visa card begins with a 4.  670 F. Supp. 2d at 614 ("the first digit of every Visa card is four").  *See also Visa Int'l Serv. Ass'n v. D.S.C. Distributors, Inc.*, No. CV-88-6411, 1991 WL 182563, at *3, 1991 U.S. Dist. LEXIS 15384, 19 U.S.P.Q. 2d (BNA) 1236 (C.D. Cal. Jan. 11, 1991) ("the first four-digit segments of the card holder number begins with a 4 as do all VISA cards").

Indeed, Visa tells the world, on the **security features page** of its Web site, that the "Account Number on valid cards begins with '4.'"[2]  All other credit card companies do the same.  On its fraud prevention site, American Express advises that "All Card Account numbers start with '37' or 34.'"[3]  Similarly, on its fraud prevention site, MasterCard tells the world to "Remember, all MasterCard account numbers start with the number 5."[4]  And Discover, on its fraud prevention page, informs us that "All Discover card numbers start with '6.'"[5]

With this in mind, the question is whether Verifone violated the Act by printing the first digit of Plaintiff's Visa card (4).  The answer, as *Broderick* and *Noble* held, is no.  The Act provides that "no person that accepts credit or debit cards for the transaction of business shall

---

[2] *See* https://usa.visa.com/dam/VCOM/download/merchants/ReducingCounterfeitFraudThroughAcceptance_012014.pdf (screen shot attached as Exhibit A to Verifone's Request for Judicial Notice, concurrently filed in connection with this Motion).

[3] *See* https://www.americanexpress.com/us/content/merchant/fraud-prevention/best-practices.html (screen shot attached as Exhibit B to Verifone's Request for Judicial Notice).

[4] *See* http://www.mastercard.com/us/merchant/pdf/MST08004_CardFeatures_r4.pdf (screen shot attached as Exhibit C to Verifone's Request for Judicial Notice).

[5] *See* http://www.discovernetwork.com/merchants/fraud-protection/prevention.html (screen shot attached as Exhibit D to Verifone's Request for Judicial Notice).

-11-

print more than the last 5 digits of the card number or the expiration upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  Though this sentence is "not a model of grammatical clarity," *Broderick*, 670 F. Supp. 2d at 617, it means those subject to the Act should print no more ***personally identifying information*** than the last five digits of a card number.  *Id.*

As *Broderick* and *Noble* made clear, the Act is not so restrictive that it permits printing ***only*** the last five digits of a credit card number.  *Broderick*, 670 F. Supp. 2d at 614; *Noble*, 2016 WL 4432685.  Indeed, such a construction would lead to an "absurd" result that would "prohibit printing the very information necessary to make the receipt useful, including a description of the item purchased."  *Broderick*, 670 F. Supp. 2d at 614.  Similarly, the Act does not prohibit printing on a receipt the brand name of the card used.  Indeed, identifying "the issuing brand of the card" is "something the credit card industry lawfully and routinely does in words on virtually every receipt."  *Id.* at 615.  Plaintiff ***himself*** admits paying with a Visa card.  SAC ¶ 31.  Here, Plaintiff's receipt simply displays the numerical equivalent (4) of "Visa," which the Act permits. Plaintiff's allegation that his receipt did not display the word "Visa" makes no difference.  SAC ¶ 34.  Businesses may print "Visa," the initial number 4, or both, without violating the Act. *Broderick*, 670 F. Supp. 2d at 615; *Noble*, 2016 WL 4432685, at *3.

Here, as in *Broderick* and *Noble*, Plaintiff's claim against Verifone fails because his receipt displays no more personally identifying information than the last four digits of his Visa credit card.

     **d.**    **Verifone's Interpretation of the Act Is Objectively Reasonable.**

Even if the Court were to find that the Act prohibits printing the first digit of a credit card, dismissal is still appropriate because Verifone's interpretation of the Act is not objectively unreasonable.  In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), the United States Supreme Court held that where, as here, a defendant's interpretation of a statute is objectively reasonable (even if incorrect), the defendant cannot be found to have willfully violated the statute.

In *Safeco*, the Supreme Court found that Safeco violated the Fair Credit Reporting Act ("FCRA") by failing to send an adverse action notice to a prospective employee, but concluded that its failure to do so was not willful as a matter of law.  Although Safeco was incorrect in its

-12-

1   interpretation of the FCRA, its interpretation was not objectively unreasonable and, as a result, it

2   could not be found to have willfully violated the statute.  *Id.* at 68-70 & n.20.

3          In concluding that Safeco's view was not objectively unreasonable, the Supreme Court

4   considered the interpretation's foundation in the statutory text and the lack of clear guidance

5   from the Federal Trade Commission or federal appellate courts.  Because Safeco's reading of the

6   statute, "albeit erroneous, was not objectively unreasonable," it was entitled to judgment as a

    matter of law as to willfulness.  *Id.* at 69.

7          Significantly, the Court held that the defendant's subjective intent was irrelevant so long

8   as its construction of the statute was objectively reasonable.

9              To the extent that [Plaintiffs] argue that evidence of subjective bad
               faith can support a willfulness finding even when the company's
10             reading of the statute is objectively reasonable, their argument is
               unsound.  Where, as here, the statutory text and relevant court and
11             agency guidance allow for more than one reasonable interpretation,
               it would defy history and current thinking to treat a defendant who
12             merely adopts one such interpretation as a knowing or reckless
               violator.  Congress could not have intended such a result for those
13             who followed an interpretation that could reasonably have found
               support in the courts, whatever their subjective intent may have
14             been.

15  *Safeco*, 551 U.S. at 70 n.20.

16         Relying on *Safeco*, the Seventh Circuit reversed an order denying a motion for summary

17  judgment in a FACTA case where, as here, the plaintiff claimed the defendant printed "the

18  wrong" four digits of her card number.  *Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486 (7th

19  Cir. 2012).  In *Van Straaten*, Shell printed on its "Shell Card" receipts four digits that appeared

20  in the middle of the card number.  Plaintiff alleged Shell's printing scheme violated FACTA.

21         Writing for the court, Chief Judge Easterbrook recognized the statute's inherent

22  ambiguity and what, exactly, "card number" means.  *Id.* at 488-90.  Shell had printed the last

23  four digits of the plaintiff's "Account Number," but those four digits appeared in the middle of a

    longer card number.  *Id.* at 488.  Rather than engage in an analysis of whether Shell committed a

24  technical violation of the Act, the Seventh Circuit ordered the district court to enter judgment in

25  Shell's favor because Shell's interpretation of the Act—whether or not correct—was

26  "objectively reasonable."  *Id.* at 491.

27

28                                              -13-

1    Of particular significance here, the court explained that "as long as the receipt contains
2  too few digits to allow identity theft," it does not matter which digits appear:

3        [T]he fact that the four digits Shell exposed on the receipt created
         no greater risk for its customers than printing the last four digits of
4        the primary account number means that Shell's decision cannot be
         called "objectively unreasonable."
5
   *Id.* at 489.  *See also Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012) (affirming
6
   dismissal of FACTA complaint where defendant's interpretation, though wrong, was not
7
   objectively unreasonable); *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 804 (7th Cir.
8
   2010) (no willful violation of FACTA where defendant's interpretation objectively reasonable);
9
   *Levine v. World Financial Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) (affirming
10
   dismissal of complaint and deeming irrelevant plaintiff's argument that defendant's records
11
   proved it believed statute prohibited challenged conduct:  "[T]his argument fails.  *Safeco* makes
12
   clear that evidence of subjective bad faith cannot support 'a willfulness finding … when the

   company's reading of the statute is objectively reasonable.'").
13
        Here, as in *Safeco* and *Van Straaten*, the Court should dismiss Plaintiff's Complaint
14
   because Verifone's interpretation of the Act—even if incorrect—is not objectively unreasonable.
15
   To begin with, ***two*** federal district court have ***already held*** that printing the first digit of a credit
16
   card number does not violate the Act—one of the very reasons that led the Supreme Court in
17
   *Safeco* to conclude that Safeco did not willfully violate the FCRA.  551 U.S. at 70 (finding
18
   Safeco's reading of the FCRA objectively reasonable where, *inter alia*, it had "a sufficiently
19
   convincing justification to have persuaded the District Court to adopt it and rule in Safeco's
20
   favor.").  And the Seventh Circuit has held that printing the ***middle*** digits of a card number poses
21
   "no greater risk for … customers than printing" some other set of digits and does not constitute a

   willful violation.  *Van Straaten*, 678 F.3d at 489.  If printing five middle digits of a card does not
22
   constitute a willful violation, then it stands to reason that printing four  identity-sensitive digits
23
   (the last four digits of Plaintiff's card number) and a number (4) that simply identifies the brand
24
   of card used (Visa) does not constitute a willful violation either.  Indeed, to penalize a company
25
   for allegedly printing ***less*** sensitive information (four digits) than the Act permits (five digits)

   would turn the statute on its head.
26
        Finally, Plaintiff's willfulness claim fails as a matter of law because Verifone's reading
27
   of the Act—that it does not apply to the manufacturer of the electronic device that prints a
                                                    -14-
28

**VERIFONE'S MOTION TO DISMISS AND POINTS
AND AUTHORITIES IN SUPPORT THEREOF**
Case No. 14-CV-04912 EJD

1    receipt but, rather, the "person that accepts credit cards or debit cards for the transaction of

2    business"—is objectively reasonable.  Indeed, *Anderson* made this very point:  "The plain

3    language of FACTA states that FACTA applies only to persons who accept credit or debit cards

4    for the transaction of business. 15 U.S.C. §1692c(g)(1).  [The manufacturer] is not, therefore, a

5    covered entity."  *Anderson*, 2010 WL 4884670, at *4 n.4.  This Court likewise rejected

6    Plaintiff's argument that the Act applies "to a broad definition of 'persons'" that includes

7    Verifone.  December 2015 [Dkt. No. 34] at 3-5.  Thus, even assuming the Act applies to

8    Verifone, which it does not, Verifone had an objectively reasonable basis for interpreting the
     statute otherwise.

9            In short, Verifone's interpretation of the statute is objectively reasonable and thus

10   Plaintiff cannot plausibly allege willfulness.  Because his claim for statutory damages is

11   premised solely on the theory that Verifone committed a willful act, dismissal must follow.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

1

2  **V.      <u>CONCLUSION</u>**

3         Plaintiff's Second Amended Complaint suffers from the same four defects as before.

4  They cannot be cured through further amendment.  *First*, he lacks standing to sue because he

   suffered no harm.  *Second*, he sued the wrong party.  Verifone did not accept Plaintiff's credit
5
   card for the transaction of the business at issue.  Plaintiff took a cab ride and did business with a
6
   cab company.  *Third*, as *Broderick* and *Noble* held, the Act does not prohibit printing the first
7
   digit of a consumer's credit card.  *Fourth*, Plaintiff does not—and cannot—plausibly allege that
8
   Verifone willfully violated the Act.  Accordingly, Verifone respectfully requests that the Court
9
   enter an Order dismissing Plaintiff's Second Amended Complaint with prejudice because any
10
   further amendment would be futile.
11

12
                                             /s/ John G. Papianou
13                                          John G. Papianou (*pro hac vice*)
                                            MONTGOMERY, MCCRACKEN,
14                                           WALKER & RHOADS, LLP

15                                          Scott D. Gattey
16                                          GATTEY LAW OFFICE

17                                          Attorneys for Defendant
                                            VERIFONE SYSTEMS, INC.
18

19

20

21

22

23

24

25

26

27
                            -16-
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on December 21, 2016, I caused to be filed the foregoing NOTICE OF MOTION AND MOTION TO DISMISS using the Court's CM/ECF system, which will send e-mail notification of the filing to Plaintiff's Counsel.  These documents are available for viewing and downloading via the CM/ECF system.

                                        /s/ John G. Papianou